after the meeting is over. Number 25-1287 from the Northern District of Iowa, Joshua Close et al. v. City of Bellevue Iowa et al. Dave O'Brien representing the family of Angela Pritchard, two sons and daughter-in-law are here. We really appreciate the opportunity to have this ruling that was issued by the Federal District Court in Iowa have it reviewed. We believe it was wrongly decided and I'm going to try to convince you of that as I work through some of the facts and law applied to this case. Angela Pritchard was murdered on October 8, 2022 by her estranged husband. She had a temporary restraining order in place that was to be mandatorily enforced under Iowa law. She repeatedly called her local hometown police, small Bellevue, Iowa, four-person police force and she made repeated complaints, over 20 complaints over a six-week period that this temporary restraining order was being violated with increasing levels of threats and harassment. Unfortunately for Angela, her estranged husband was friendly with the local police officers who just actively, and this is a critical distinction, over a six-week period, five and a half, six-week period, they actively refused to enforce this restraining order. Each time she would call, they would say things like, you'll have that in a small town, I'll tell them to cut it out. You can't prove he wrote that note. He put signs in his window on Main Street that she had to drive by every day, everybody in town drove by it every day, trying to communicate with her. When she called the police about these signs, they said- The officers did that? They put signs up? No, CP put, the murderer put signs in his window on Main Street. Counsel, let me ask you about this. This is obviously a very tragic case, but as I understand it, you're asserting the state-created danger claim, and so there has to be an allegation of an affirmative harmful act on the part of the defendant. What affirmative harmful acts are alleged in the complaint, beyond just inaction? That's the difference I need to draw, Judge Gras. Actively refusing to enforce a restraining order that you're required to enforce under Iowa law is active participation. That's an omission, though. Active participation is if they called him and said, yeah, you know what your wife is doing, X, Y, and Z, and egged him on. That would be active participation, just standing by. I don't know how you can say that's a refusal, which is an omission, is active. I disagree. If you actively refuse to do something, you are being active about that. This just didn't happen one time, like in Castle Rock, over one five-hour period. This is over 20 instances of her complaining, where his threats are getting increasing, where she's saying, you've got to do something, and they absolutely refuse to arrest him. They showed favoritism to him time and time again, including when they finally did arrest him after the county attorney warned them that this was mandatory arrest, that they had no option but to arrest him. Under the Freeman case from this court, these facts are more egregious than what sets out in this case that gets over this active issue. Let me ask you this. We're in a law school. Suppose the dean of students says somebody's acting up, consistently in class harassing other students, and the dean of the law school just ignores it. Multiple complaints from other students, so-and-so was harassing people. Dean just sits and does nothing about it. Actively refuses, in your view, is that an omission, or is that the commission of some sort of act? Well, I think it is the commission of an act, refusing to do so, and particularly, it may not look, it does depend on the circumstances, but let me add another factor to your scenario. What if the dean is friends with the father of this student, and is specifically refusing to act because of that relationship? That I would say, Judge Strauss, is active refusal. That gets them past the Freeman test, and the Freeman test is a case from the Eighth Circuit where a local police chief with friends, very similar circumstances, was friends with a local business owner who ended up murdering his spouse, and the Eighth Circuit held that they interfered with the protective services that were available in the community. This gets me to really my next point. Iowa has an extremely robust enforcement provision to protect victims of domestic violence, and it's absolutely mandatory, which also gets over the Castle Rock due process procedural part, Judge Strauss, because in Iowa, it is mandatory that you arrest. You have no discretion. It is right in the order that was issued in this case. You have no discretion. You cannot, no discretion. Only the court can relieve the defendant from the restriction listed in this order. Punishment for violation of this order are governed by Iowa Code Chapter 664A. That's the provision that says law enforcement officers may be held liable civilly and potentially criminally for refusing to enforce mandatory restrictions if they act willfully, in bad faith, and wantonly, and so we believe 20 plus times completely refusing to enforce Iowa law gets us past, at the pleading stage, those requirements for alleging willful and wantonness. I think, Counsel, this interrelates with the issue of the denial of leave to amend. Had you been allowed to amend, what would you have added, and would it be enough to push this from inaction to affirmative conduct? Well, we did file an amendment, an amendment to leave, but you have to remember, we didn't choose to stand on our pleading. They've got all the information. This was a murder that happened. Within a month of the murder, we put a FOIA request in, because we didn't know precisely what was happening, and we asked them to provide us all this information. We did a supplemental FOIA request a month later. They provided us, I won't say nothing, but very little, a few documents. We never got a substantive request. They violated Iowa law on the FOIA request. Now, we didn't push it hard at first, because we did want to focus on putting this heinous person in prison, and we didn't want to interfere with that, and that happened. Then we started pushing the matter and filing this lawsuit once we got a little bit of information about what was happening, but they withheld the documents from us. The county attorney in this case sent these defendants an email that said, arrests under Iowa law are mandatory. We requested that kind of information numerous times. We've never been provided. It's never been identified as a privilege log. They literally hid information from us. They put admissions in that we later were able to establish were false. We asked them, did you read these restraining order and understand what it said? They denied that they did that. Is that what you would have added? Back to Judge Graza's question. Would you have added they hid the information, or were you going to add something affirmative that they did, like actual conduct? Yes, here's the actual conduct we would have been able to add that we found out about. In addition to my distinction between act of refusal, I appreciate that, I got to point it out though, but the one time that they did. They go out and they say, you shall arrest. You shall arrest him. You have to. Then there's an incident where she calls and Kloff, one of the defendants, Kloff goes out and arrests this man, CP. At the time of the arrest, they're walking around, they're engaged in good natured conversation. He doesn't put handcuffs on him. He lets him sit in the front seat. CP complains about having this happen and Kloff agrees with him that men aren't treated fairly necessarily under these restraining laws. He allows him to call his lawyer while he's taking him to jail. If that's not preferential treatment, if that isn't telling this man, we're not going to enforce the law against you. He's arrested. Excuse me, Judge. No, that's okay. The primary case from the Supreme Court, at least on substantive due process, is Ducheney.  Don't you think the facts of Ducheney are even more egregious and shocking than this case and the Supreme Court said it's where it's set up that you've got to help create or render someone terribly vulnerable while the state may have been aware of the dangers. And they put the child back in the father's custody that beat them so bad they were disabled for life. Don't you think that we have to be guided by what the Supreme Court said in Ducheney? You certainly have to be guided by it, but I don't agree with the premise of your question that this case is not worse. That was a one-time incident where they took him away and they gave him back in Ducheney, if I recall it correctly. We're talking about 20 plus instances of increasing problems with this man where there are complaints and they're just actively refusing and then the one time they do, they treated him as I just talked about. Keep in mind, this is a guy that's out on a Class C felony because he stole money from his employer and then she finds, Angela finds, a tracking device in her vehicle, calls the police, they come over, placing a tracking device in a vehicle, part of Iowa's robust enforcement of these provisions is a Class C felony. The defendants do nothing. This guy should have been in jail at the time that he committed this murder. If they would have just investigated that matter, a Class C felony plus repeated violations, enhanced violations for a re-violation of this restraining order, he should have been spending years in jail and not even been out on the streets where he could continue to do this. Just real quickly on Judge Benton's points, in Descheny, they placed him back in the care of an abusive parent. To me, that feels more like action than this case does because here they're just sitting on their hands. Even if they had an affirmative duty, they're sitting on their hands. There's no, oh yeah, we placed them in the same house together again and facilitated this murder. But at Descheny, it still wasn't enough. So I'm trying to figure out how this can be action, but Descheny is not. Well, I don't think they decided Descheny wasn't action. This is action for the reasons I said. It's actions. It's the attaboy attitude that's in Okun. They are definitely putting her in a worse position than she would have been if they would have enforced this law that they were required to enforce. Keep in mind, I have a statutory claim under Iowa law for mandatory enforcement that includes civil judgment that the district court judge dismissed in this case. We asked after we realized he was going to do that to certify the question to the Iowa Supreme Court and he refused. I note that in Castle Rock, they even asked, do you want us to certify the question at the Supreme Court level? So I think for the least, you remanded for us to check that out, the procedural due process part of this, not just the substantive. I'm going to reserve the rest of my time. If you don't have any more questions for me, thank you, Mr. Morgan. May it please the court. My name is Dan Morgan, along with my partner, Wilford Stone, we represent the city defendants, Dennis Schrader, Ryan Kloft, Shelby Mutzel, and the city of Bellevue, Iowa. This case is governed by Ducheney v. Winnebago County and town of Castle Rock v. Gonzalez. The due process clause imposes no constitutional duty on the police to protect private individuals from the violent acts of others. The district court in this case faithfully applied that principle, correctly finding that the complaint alleged no affirmative act by the city defendants and that all state law claims fail as a matter of law. The judgment should be affirmed. Turning first to the procedural question of Rule 59e motion, it's important to remember that the plaintiff's motion was filed as a 59e motion to alter or amend judgment, not a Rule 15 motion to amend, which involves primarily motions to amend before trial. Therefore, the correct standard or standards for this court to apply to this motion, as the district court did in this case, are those that are applicable to Rule 59e motions, which does not directly require the court to consider prejudice to either party. It's important to remember that Rule 59e motions serve a limited function of correcting manifest errors of law, presenting newly discovered evidence, or preventing manifest injustice. Courts have broad discretion in determining whether to grant or deny such motions, and appellate courts, this is important, will not reverse those decisions absent a clear abuse of discretion. Plaintiffs cannot satisfy that high burden in this case. More specifically, the Iowa District Court in Nicholson v. Biomet noted that Rule 59e motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments that could have been presented before judgment. These standards were actually all just recently reaffirmed by this court on November 4th, 2025 in the 2K, and I apologize if I'm saying that wrong, v. Troop, case number 24-1934 before Judges Loken, Kelley, and Erickson. Specifically, this- That wasn't in your brief, right? It was not, Your Honor. And you didn't send us a 28-J letter on that? I did not, Your Honor. Please do that after the argument. Very well. Thank you, Your Honor. We'll do it. Go ahead. You can discuss it, though. Yes. I just wanted to say a quote from that opinion here, or looking at 2K, is that the court notes that while it's true we can't outright ignore Rule 15a considerations for amendment of pleadings, but leave to amend a pleading will be granted only if it is consistent with the stringent standards governing the grant of Rule 59e relief. As outlined at length in the City's briefing, the plaintiffs had ample time to address any so-called new evidence or new legal theories prior to the District Court's ruling on the motion to dismiss. Instead, the plaintiffs waited until eight days after the District Court's dismissal order to file their Rule 59e motion to alter or amend.  Yes, Your Honor. If the appellants had been granted leave to amend and been allowed to add factual allegations that the officers had received clear direction from the county attorney to enforce this protective order and that they had disregarded those instructions, why wouldn't that push this over the line from inaction to affirmative harmful conduct? Your Honor, I would say that they would not push it over to affirmative conduct because again it comes back to there are lots of, even if the officers got that direction, which would quite frankly be no different than what various statutes under the Iowa law say about shall do this, shall do that. If they didn't do it... This isn't just a statute. This is the county attorney advising them as employees of the governmental entity that you need to go out and enforce this, here's what the law says, and then they ignore that. Where is the line between mere inaction and affirmative harmful conduct? It's a very good question, Your Honor, and I'm not sure if I can answer directly, quantitatively, how many violations may be or what facts may lead to that. What I can point out, though, is if the facts and time frame in Castle Rock, which involved admittedly a relatively short time frame, but six approximately calls for service between about 5.30 p.m. and about 3 o'clock in the morning until the horrible events of Castle Rock, if that wasn't enough to warrant to turn inaction into action, then I don't think it's enough here. The same is true with DeShaney. It's important to remember that DeShaney actually occurs over several months, so there's originally a child protective services get involved, the child is placed back in the home, the child protective services do six months of monthly visits, noting each time some concerns about the welfare of the child, some bruising, some scars, some injuries, scabs, that kind of thing, and even in DeShaney and in both in Castle Rock, the Supreme Court said that's not enough to push inaction into affirmative conduct that satisfies the state-created danger doctrine. Is affirmative encouragement enough? I would argue no, Your Honor. There's a little bit of that touched on in the Freeman case that was mentioned by both parties, more specifically the plaintiffs, and addressed in our brief as well. I do want to note that Freeman was overturned on the principle that basically the plaintiffs should have the opportunity to amend their complaint in light of the DeShaney opinion. But in Freeman, and perhaps this is instructive or at least informative to this court, is the dissent's opinion that notes that there was no affirmative conduct pled in the original Freeman complaint. There's a suggestion that was made by counsel at oral arguments in the Freeman opinion that the police chief affirmatively told his officers to not enforce the protective order against that individual in that case. We don't know how that ultimately played out, ultimately, but that would be in that case if there was an allegation here that the police chief affirmatively told his officers do not go out and force this against Christopher Pritchard, that might be an action that would warrant some level of state-created danger. However, no such allegation is present in this case. What about if the opposing counsel says these two were kind of in cahoots with each other or close friends? Suppose that he'd said, gosh, your wife is really a pain in the neck and she's saying all these terrible things about you, you really ought to do something about it. And then we had the horrible, tragic events that happened in the case. That would have to be action, wouldn't it? It's like basically being an accomplice to a crime. You're encouraging somebody to go out and commit a crime. So okay, to make sure I understand, you're saying if the officers had said, this woman's really horrible, you should actively. If they were actively encouraging her to go, or encouraging Mr. Pritchard to go murder Ms. Pritchard, that certainly would at least get some level of the state-created danger doctrine satisfied. I would agree with you there. That's not true under these facts. There's no allegations that our officers did that. There's no allegations that our officers said, hey, you know what, why don't you guys go make up? You should go live together again. You'll figure this out. There's no allegation that, you know, we'll stand by and watch while you guys sort this out. That's not present here. So I would agree with you, Judge, that if that was the case, if they were actively encouraging you, hey, go deal with her or something to that effect, yes, that would probably at least satisfy the initial question of the state-created danger doctrine. However... Is active encouragement a question of fact? I would say as a threshold question, no. Because the question can be readily answered by the court in looking at the question, at least in this case, whether or not each individual alleged violation amounts to a probable cause. So really I think in that way, if we're talking about inaction to satisfy this, to become affirmative conduct, we're also still looking at the probable cause analysis, which is ultimately a question of law for the court. You agree in the Second Circuit affirmative encouragement is enough, right? I agree that that is what the Okun opinion says. However, I will note that a couple of issues with the Okun opinion. First off, it's been expressly rejected by the Fifth Circuit and the Third Circuit. So they found Okun not persuasive. It's obviously, of course, only persuasive on this court. And most importantly, and I think this is really, really critical, that Okun makes no real mention of Castle Rock, which admittedly, yes, was primarily focused on the procedural due process element. However, at the very end of Castle Rock, the United States Supreme Court said, in light of today's decision, and that and DeShaney, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the due process clause, and neither in its procedural nor its substantive manifestations. So I think reading that together and reading that opinion, and I should mention right after that sentence, the Supreme Court notes its general distaste, I guess, for continuing to use the 14th Amendment as a font of ongoing litigation and civil liability. Of course, Okun is after Castle Rock. Agreed, Your Honor. But I think it is problematic that they don't discuss Castle Rock. Now, I don't know what the district court arguments were in Okun, in all fairness. So maybe it wasn't addressed, and therefore the court didn't address it. But I think it is at least suspect authority, at least suspect use for this court in resolving this case. Turning to, more specifically, the other question is, with Rule 59e motion, obviously, again, you have to say they abuse the discretion, but also that you have to look at whether or not the claim would be futile. And as we've discussed, amendment here would be futile because you cannot satisfy the state-created danger doctrine, which requires not only that the increased risk be serious, immediate, and proximate. Counsel, do you agree that since it was decided on futility grounds, that we are under de novo review as to that issue? I would agree, Your Honor, that if, well, I guess if you could say it was decided on futility, yes, then it would be under de novo review. I thought that's what you just said. Well, yes, I agree that it was ultimately, I was kind of couching both arguments, that I think they haven't abused the discretion. But to the extent the district court did decide it on futility, then yes, it would be de novo review. But either way, even under de novo review, I don't think the case outcome changes, again, for the scope of the state-created danger doctrine. Because it's important to remember that Mr. Pritchard was arrested in this case. He was arrested, taken to jail, had an initial appearance, and the court, the state court, not our officers, let him out and gave him 24 hours to get his affairs order and return to jail. Obviously, we know he did not do that. Well, help me on timeline. He was arrested twice in the previous six months before her death, correct, her murder? That could be, Your Honor. I will admit, I don't remember the- Were there two arrests? Let me ask you that. There could be. There's definitely at least arrest on September 15, 2022. That much I know for sure. There may have been another one earlier that I'm not aware of off the top of my head. But there was definitely an arrest on September 15, 2022. And then he had his hearing on September 29, 2022. And then he was ordered to report to court or to jail on September 30, 2022. Well, when was the arrest warrant issued? I'm interested in the facts. Sure. The arrest warrant for that specific one I'm talking about would have come out after approximately about 2 o'clock PM on September 30th when he failed to show up for jail, failed to show up for his admittedness, and the arrest warrant would have been issued. And from October 1st to October 8th, there were no calls for service from Ms. Pritchard or anybody on her behalf, indicating that Mr. Pritchard's contacted me, that he said I'm here, that he's doing these things, he's driving by my house, there's quite frankly radio silence. And then ultimately we know the tragic situation that happened on October 8th, 2022. With my remaining time, I do want to briefly address some of the state law claims, specifically the claim that there's an express cause of action under the Iowa Code. There is no express language in Sections 236.11 or 664A of the Iowa Code providing for a private cause of action. Since it's not expressly provided, the plaintiff's only argument is that it must be implied by these statutes. And I won't regurgitate all those factors, they are here under Iowa law, but the legislative intent is the most important factor in that analysis. And the Iowa legislature certainly knows how to create a private cause of action, and some of those examples are in our briefing, but they did not do so here. Even as the District Court noted, as Judge Williams noted, even if civil cause of action can be implied from these statutes, the District Court correctly found that the plaintiff's argument would nevertheless fail because the statutes expressly mention acts of law enforcement. In this case, the plaintiffs have only alleged inaction by law enforcement. And also, on the certification question, it's important to remember that the decision to certify is entirely discretionary. The plaintiffs have not and cannot show that the District Court views as well-established discretion on this issue because the District Court's judgment is rendered on reasoned grounds. This is also not a removal case. The plaintiffs chose to file their case in federal court and chose to have a federal judge rule upon their state law claims. There's no abuse of discretion on the certification issue, only the plaintiff's choices. They chose their claims, they chose their form, and they chose to stand on their arguments in the form they are choosing. The District Court did not err in denying certification. This case is undeniably tragic. We do not deny that. We never have denied that. DeShaney, Calsarock, also undeniably tragic. But tragedy does not create constitutional liability. The Constitution does not guarantee protection from private violence, and Iowa law does not provide the private causes of action that the plaintiffs seek. We respectfully request that this Court affirm the District Court's judgment. Thank you. Thank you. Mr. O'Brien. Thank you, Judge. Just in response to that last, that tragedy does not create liability. My response to that is, it may not, but Iowa law does. And Iowa law clearly states that these TROs are to be enforced. And if they're not enforced, you may be, the officers, they're trained that they can be held civilly liable for refusing to enforce these orders if they do so willfully, wantonly and in bad faith. That is a key distinction between DeShaney, a key distinction between Calsarock. They have an absolute obligation under Iowa law. And Judge Graz, we did file an amended petition that has all of this set out in it. And the judge looked at it and said, well, it still doesn't get us past these problems that I set out. But I want to point out on this, and they spent a lot of time on this amendment, the U.S. Supreme Court has very clearly said that amendments shall be allowed at any stage of a proceeding. And it is reversible error to refuse to allow an amendment without showing a prejudice. Now this is a case where we just got started in discovery. We're trying to get things. We had to write good faith letters in order to get this material that they contain, have all of it. They're hiding it from us. They're not providing it. We're getting it in piecemeal. And within a seven-week period, we get different supplementals and we're preparing on a motion for an amend. And in the meantime, the ruling comes down. So we had to watch dozens of hours of videotape. It takes a little bit to get through there to see this. We didn't know because they never told us. They never even did a privilege log and said the county attorney had told us this was mandatory. We caught him on his body cam reading the message saying that the county attorney told him it was mandatory. That takes a lot of time and effort. There's no reason to rush through this. We submitted two documents from a case with similar claims that we filed strictly in state court, the Rogers case, where an Iowa district judge was totally aware of Judge Williams' decision and rejected it and denied the motion to dismiss there on these state-based claims. And then not only that happened, but the defendants came in in response to a request to admit in that case and admitted that Iowa law mandated arrest. Now that's so critical. That's not evidence, right? Anybody that's had evidence here, admissions are narrowing the facts in the case, right? And so in that Rogers case that's pending in Woodbury County right now, where a district judge disagreed with Judge Williams and said under Iowa law, we can enforce these provisions, by the way, and that case is still pending and we can enforce these provisions and you should follow that. You should remand and ask Judge Williams to follow that. That case won't be appealed on that issue because the defendants have admitted that that's Iowa law. And keep in mind, that should come as no surprise to them because their county attorney told them the same thing. So there are different reasons. Iowa set out to protect people that were in this position and these officers wrongfully and without justification refused to do that because he was a friend of theirs and that creates liability under Iowa law for sure, if not under federal law. Thank you. Thank you both for the argument. Case 25-1287 is submitted for decision by the court. And that concludes the arguments in the case. At this time, since we are at a law school, we will take two or three questions from the students, not from the attorneys.